UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMETER INVESTMENT HOLDINGS,<br><br>                                  Plaintiff,<br><br>v.<br><br>J. STREICHER HOLDINGS, LLC and<br>J. STREICHER & CO. L.L.C.,<br><br>                                  Defendants. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Demeter Investment Holdings ("Demeter" or "Lender" or "Plaintiff"), by and through the undersigned counsel, brings this action against Defendants J. Streicher Holdings LLC ("Streicher" or "Borrower" or "Defendant") and J. Streicher & Co. L.L.C. ("JSCo" or "Defendant", and collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This matter is straight-forward: Lender loaned millions of dollars to Borrower pursuant to three Loan Agreements and Promissory Notes (the "Notes"),[1] the maturity dates of the Notes have long passed, and Borrower is in default and has yet to repay Lender the amounts due. This is despite numerous efforts by Lender to afford Borrower additional time to repay the amounts owed. Lender now seeks, as it is entitled to under the clear terms of the relevant agreements and New York law, to recover from Borrower the amount owed to Lender under the applicable Notes, plus the accrued interest, fees, and expenses.

2. Under the Notes, Lender and Borrower additionally agreed that part or all of the loans made pursuant to the Notes could be contributed directly or indirectly by Borrower to its

---

[1] "Notes" refers to the Loan Agreement and Promissory Note dated March 9, 2023 (the "March 9 Note") (Ex. A); the Loan Agreement and Promissory Note dated March 20, 2023 (the "March 20 Note") (Ex. B); and the Loan Agreement and Promissory dated June 7, 2023 (the "June 7 Note") (Ex. C). Each is attached as an exhibit to this complaint.

affiliate JSCo, a SEC registered broker-dealer. Despite representing that they are separate entities, at all relevant times, Borrower and JSCo have operated, in effect, as a single entity. Borrower, at all relevant times, dominated and controlled the financial, operational, and business practices of JSCo such that neither entity had a separate mind, will, or existence of their own. In addition, Borrower improperly commingled JSCo's assets and liabilities with its own, directing JSCo to assume and repay Borrower's debts. As such, Lender seeks an order in equity to pierce the corporate veils of the Defendants and award a judgment against JSCo, jointly and severally with Borrower, for all amounts owed and outstanding to Lender under the Notes.

## PARTIES

3. Demeter Investment Holdings, the Lender, is a Cayman Islands incorporated Special Purpose Vehicle with its principal place of business located at c/o Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.

4. J. Streicher Holdings, LLC, the Borrower, is a Delaware limited liability company with its principal place of business located in New York at 31 Hudson Yards, 11th Floor, New York, NY 10001.

5. J. Streicher & Co. L.L.C., a corporate affiliate of J. Streicher Holdings, LLC, is a New York limited liability company with its principal place of business located in New York at 28 Liberty Street, 6th Floor, New York, NY 10005.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the action is brought by a citizen of a foreign state against a citizen of a state within the United States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interest.

7. This Court has personal jurisdiction over Defendants as both are corporate entities with their principal place of business in New York, New York. Additionally, both Defendants have consented to jurisdiction in this Court as per the Notes.

8. Venue is proper in this county pursuant to 28 U.S.C. § 1391(c)(2) because this court is the situs of Defendants' principal places of business and because the parties have agreed to submit to the exclusive jurisdiction of either the federal or state courts located in the City of New York and County of New York.

## FACTUAL ALLEGATIONS

### The Loan Agreements and Promissory Notes

9. On March 9, 2023, Borrower and Lender (the "Parties") entered into the First Loan Agreement and Promissory Note (the "March 9 Note"), pursuant to which Lender agreed to loan Borrower the principal sum of $10,000,000.00. (Ex. A, § 1(a).) The loan was to be delivered in two separate tranches: the first tranche of $3,000,000.00, and the second tranche of $7,000,000.00. (*Id.*) These monies were transmitted by Lender to Borrower on two successive days—the first tranche on March 10 and the second tranche on March 11, 2023.

10. On March 20, 2023, Borrower and Lender entered into a Second Loan Agreement and Promissory Note (the "March 20 Note") pursuant to which Lender agreed to loan Borrower the principal sum of $3,000,000.00. (Ex. B, § 1(a).) These monies were transmitted by Lender to Borrower on March 21, 2023.

11. On June 7, 2023, Borrower and Lender entered into a Third Loan Agreement and Promissory Note (the "June 7 Note" and, together with the March 9 Note and March 20 Note, the "Notes") pursuant to which Lender agreed to loan Borrower the principal sum of $5,500,000.00. (Ex. C, § 1(a).) These monies were transmitted by Lender to Borrower on June 8, 2023.

*Terms of Repayment*

12.     Pursuant to Section 1(a) of each of the Notes,[2] Borrower agreed and promised to repay the principal amounts loaned to Borrower, in addition to an annual interest rate of 10% (to be computed on a quarterly basis), twelve (12) months from the date of receipt of the loan proceeds. (Ex. A, § 1(a); Ex. B, § 1(a); Ex. C, § 1(a).)

13.     Pursuant to Section 2(a) of the Notes, the Parties agreed that interest payments on each loan will "be payable in regular installments scheduled on a quarterly basis." (Ex. A, § 2(a); Ex. B, § 2(a); Ex. C, § 2(a).) Additionally, "[n]o interest [will] accrue once the Principal [loaned] is paid in full." (*Id.*)

14.     Pursuant to Section 2(c) of the Notes, the Parties agreed that late interest payments will "continue to accrue interest owed pro rata to the time after the interest payment['s] [Due Date]," and that late payments are not otherwise subject to penalties. (Ex. A, § 2(c); Ex. B, § 2(c); Ex. C, § 2(c).)

15.     Pursuant to Section 8(a) of the Notes, the Parties agreed that Borrower will pay Lender's "costs of suit and such sum as the court may adjudge as reasonable attorney's fees in any action to enforce payment of" the Notes. (Ex. A, § 8(a); Ex. B, § 8(a); Ex. C, § 8(a).)

*Key Contractual Terms*

16.     Pursuant to Section 3(a) of the Notes, the Parties agreed that each loan will "automatically renew for one-year periods unless either [Party] gives prior notice to the other no less than 30 days before the Due Date [of the loan] and no more than 60 days before the Due Date [of the loan]." (Ex. A, § 3(a); Ex. B, § 3(a); Ex. C, § 3(a).)

---

[2] The Notes contain virtually identical terms other than the principal amounts loaned and their maturity dates.

4

17. Pursuant to Section 4(a) of the Notes, the Parties agreed to certain enumerated Events of Default. (Ex. A, § 4(a), Ex. B, § 4(a), Ex. C, § 4(a).) Upon the occurrence of an Event of Default, the principal amount loaned under the Note and "any other obligations of the Borrower to the Lender" would become due immediately. (*Id.*) Pursuant to Section 4(a)(i) of the Notes, "the failure of the Borrower to make its quarterly interest payment under Section 2(a) [of a Note]" constitutes an Event of Default "(subject to a cure period of 30 days following notice of nonpayment form Lender)." (Ex. A, § 4(a)(i), Ex. B, § 4(a)(i), Ex. C, § 4(a)(i).)

18. Pursuant to Section 4(b) of the Notes, the Parties agreed that "[i]f the Borrower defaults under [a Note] and fails to repay the [l]oan in full by the Due Date, the unpaid Principal [will] continue to accrue interest in accordance with [the terms the Note]." (Ex. A, § 4(b); Ex. B, § 4(b); Ex. C, § 4(b).)

19. Pursuant to Section 8(b) of the Notes, the Parties agreed that any "failure or delay by Lender in exercising or enforcing Lender's rights under [the Notes] shall not be considered a waiver of such rights. Furthermore, there shall be no implied waiver of Lender's rights if the Lender waives any obligation of the Borrower in connection with [the Notes]." (Ex. A, § 8(b), Ex. B., § 8(b); Ex. C, § 8(b).)

**JSCo's Use of the Loans and Defendants' Misuse of the Corporate Form**

20. Pursuant to Section 6 of the Notes, Lender agreed "that part of the Principal [of each Note] may be contributed by the Borrower directly or indirectly … to its subsidiary, J. Streicher & Co., L.L.C. [or JSCo]." (Ex. A, § 6(b), Ex. B § 6(b), Ex. C § 6(b).)[3]

21. Upon information and belief, at all relevant times, Borrower has dominated and controlled JSCo and used JSCo's corporate form for Borrower's own benefit.

---

[3] Pursuant to Section 6(b)(i) of the Notes, JSCo disclaimed that: (1) it is in any way a party to the loans; (2) has assets pledged directly or indirectly to secure the loans; and (3) that it is subject to any recourse of any kind to the Lender for collection of the Loan against the Borrower. (Ex. A, § 6(a)(i); Ex. B, § 6(a)(i); Ex. C, § 6(a)(i).)

22. Upon information and belief, Borrower and JSCo have disregarded certain corporate formalities. Both entities, for example, are owned and operated by the same directors, officers, and personnel.

23. Upon information and belief, Borrower has improperly commingled its assets and liabilities with the assets and liabilities of JSCo. Borrower transferred to JSCo substantial amounts of the money loaned to Borrower pursuant to the Notes to enable JSCo to invest such proceeds in risky market ventures.

24. Upon information and belief, Borrower is insufficiently capitalized to repay the amounts owed to Lender and has relied on JSCo's assets to pay Borrower's debts, including by directing JSCo to borrow monies to repay Lender.

25. Upon information and belief, Borrower has used JSCo's corporate form to commit an injustice against Lender by shielding Borrower's assets from any attempt by Lender to recover outstanding principal and interest from Borrower.

**Streicher Breaches the Loan Agreements and Promissory Notes**

26. The loans made pursuant to each Note were contemplated to mature (the "Due Dates") on the following dates: March 9, 2024 (the March 9 Note), March 20, 2024 (the March 20 Note), and June 6, 2024 (the June 7 Note).[4] (Ex. A, § 1(a), Ex. B, § 1(a); Ex. C, § 1(a).)

27. The below table reflects the payments contemplated under the Notes, and the payments actually received by Lender from Borrower.

---

[4] The June 7 Note was executed on June 7, 2023, but lists its maturity date as June 6, 2024.

| Principal Amounts Paid and Outstanding ||||| 
|---|---|---|---|---|
| **Due Date** | **Amount Owed** | **Date Paid** | **Amount Paid** | **Outstanding Balance** |
|  | $0.00 | 03/10/23 | ($3,000,000.00) | $3,000,000.00 |
|  | $0.00 | 03/11/23 | ($7,000,000.00) | $10,000,000.00 |
|  | $0.00 | 03/21/23 | ($3,000,000.00) | $13,000,000.00 |
|  | $0.00 | 06/08/23 | ($5,500,000.00) | $18,500,000.00 |
| 03/10/24 | $10,000,000.00 | 07/24/23 | $741,917.80 | $17,758,082.20 |
|  |  | 08/07/23 | $1,931,886.81 | $15,826,195.39 |
|  |  | 08/08/23 | $995,664.06 | $14,830,531.33 |
| 03/21/24 | $3,000,000.00 |  | $0.00 | $14,830,531.33 |
| 06/08/24 | $5,500,000.00 |  | $0.00 | $14,830,531.33 |

| Interest Amounts Paid and Outstanding ||||| 
|---|---|---|---|---|
| **Due Date** | **Amount Owed** | **Date Paid** | **Amount Paid** | **Outstanding Balance** |
| 06/01/23 | $284,657.53 | 06/01/23 | $284,657.53 | $0.00 |
| 09/01/23 | $97,515.82 |  | $0.00 | $97,515.82 |
| 09/30/23 | $117,831.62 | 09/30/23** | $215,347.44 | $0.00 |
| 12/31/23 | $373,810.65 | 12/31/23 | $0.00 | $373,810.65 |
|  |  | 01/18/24* | $373,770.66 | $39.99 |
| 03/9/24 | $280,358.75 |  | $0.00 | $280,398.74 |
| 03/20/24 | $44,694.87 |  | $0.00 | $325,093.61 |
| 03/30/24 | $40,631.70 |  | $0.00 | $365,725.31 |
|  |  | 04/30/2024* | $182,802.00 | $182,923.31 |
| 06/08/24 | $290,860.87 |  | $0.00 | $473,784.19 |
| 06/30/24 | $91,269.98 |  | $0.00 | $565,054.16 |
| 09/30/24 | $388,168.11 |  | $0.00 | $953,107.28 |
|  |  | 10/05/2024* | $250,000.00 | $703,107.28 |
| *Late payment <br> **Late payment for portion of amount owed |||||

As can be seen, Borrower has wholly failed to meet its obligations to repay the monies owed pursuant to the Notes.

28.  On December 31, 2023, Borrower failed to make its required quarterly payment to Lender for outstanding interest of $373,810.65, triggering an Event of Default (although providing Borrower with thirty days to cure). On January 18, 2024, Borrower paid $373,770.66 to Lender

7

but continued to owe $39.99 in outstanding interest. Borrower's failure to pay all outstanding interest owed Lender by January 31, 2023 constituted an Event of Default under the Notes.

29. On March 9, 2024, Borrower failed to fully repay all outstanding interest and principal owed Lender by the Due Date of the March 9 Note.

30. On March 20, 2024, Borrower failed to fully repay all outstanding interest and principal owed Lender by the Due Date of the March 20 Note.

31. On March 30, 2024, Borrower failed to make its required quarterly payment to Lender for outstanding interest of $365,725.31, triggering an Event of Default (although providing Borrower with thirty days to cure). On April 30, 2024, Borrower paid $182,802.00 to Lender but continued to owe the balance of its outstanding interest. Borrower's failure to pay all outstanding interest owed Lender by May 30, 2024 constituted an Event of Default under the Notes.

32. On June 6, 2024, Borrower failed to fully repay all outstanding interest and principal owed Lender by the Due Date of the June 7 Note.

33. On June 30, 2024, Borrower failed to make its required quarterly payment to Lender for outstanding interest of $565,054.16, triggering an Event of Default (although providing Borrower with thirty days to cure). Borrower made no further payments to Lender within the 30-day cure period following June 30, 2024. Borrower's failure to pay all outstanding interest owed Lender by July 30, 2024 constituted an Event of Default under the Notes.

34. On September 30, 2024, Borrower failed to make its required quarterly payment to Lender for outstanding interest of $953,107.28, triggering an Event of Default (although providing Borrower with thirty days to cure). On October 5, 2024, Borrower paid $250,000.00 to Lender but continued to owe $703,107.28 in outstanding interest. Borrower made no further payments to Lender within the 30-day cure period following September 30, 2024. Borrower's failure to pay

all outstanding interest owed Lender by October 30, 2024 constituted an Event of Default under the Notes.

35. Borrower has failed to repay the outstanding principal amounts owed under each of the Notes by the applicable Due Dates. Borrower has also failed to make timely quarterly interest payments or to pay outstanding interest accrued on late interest payments. To date, Borrower owes Lender $15,533,638.61, including $703,107.28 in outstanding interest and $14,830,531.33 in outstanding principal. (*Id.*)

36. Borrower's failure to make timely interest payments constitutes a breach and Event of Default pursuant to Section 4(a)(i) of each of the Notes.

37. Borrower's failure to repay the loans in full by the applicable Due Dates constitutes a breach and Event of Default pursuant to Section 4(b) of each of the Notes.

**Demeter Notifies Streicher of its Breaches and Opportunity to Cure**

38. On January 31, 2024, Lender sent a letter notifying Borrower that Lender would not elect to rollover the loans issued pursuant to the March 9 and March 20 Notes. (Ex. D.)

39. On March 11, 2024, Lender sent Borrower a letter demanding immediate repayment of all principal amounts owed ($6,330,531.33) and all interest and other amounts accrued ($284,461.14) pursuant to the March 9 Note as of the close of business on March 10, 2024. (*Id.*) Borrower did not comply with Lender's demand.

40. On April 17, 2024, Lender sent Borrower an additional letter demanding immediate repayment of all principal amounts owed ($9,330,531.33) and all interest and other amounts accrued ($438,861.19) pursuant to the March 9 and March 20 Notes as of the close of business on March 17, 2024. Borrower did not comply with Lender's demand.

41. On April 17, 2024, Lender sent an additional letter notifying Borrower that Lender would not elect to rollover the loan issued pursuant to the June 7 Note. (Ex. E.)

42. On or about May 1, 2024, JSCo represented to Lender that it had received a proof of funds from its lender for full repayment of all amounts owed pursuant the Notes, including principal and outstanding interest. Upon information and belief, Borrower has abused JSCo's corporate form to benefit Borrower by directing JSCo to deploy its credit and assets to pay down Borrower's debt.

43. On or about May 12, 2024, Lender sent Borrower a letter demanding immediate repayment of all principal amounts owed and all interest and other amounts accrued pursuant to the June 7 Note.

44. After attempting to negotiate with Borrower for a period of months following the delivery of Lender's May 12, 2024 demand letter, Borrower proceeded to provide Lender with a final opportunity to make good on its outstanding obligations. On November 12, 2024, Lender's counsel sent Borrower a letter detailing Borrower's defaults under Sections 4(a) and (b) of the Notes and demanding Borrower promptly pay all outstanding monies owed to Lender. (Ex. F.) Pursuant to Section 4(a)(i) of the Notes, Lender provided Borrower "a cure period of 30 days following [this] notice of nonpayment" and demanded Borrower render all payments of outstanding amounts owed under the Notes by Friday, December 11, 2024. (*Id.*)

45. To date, Lender has not received a meaningful or serious response to the demand expressed by its November 12, 2024 letter, nor has Lender received any other communication or indication from Borrower of its intent to fully satisfy its obligations under the Notes.

**Borrower Is in Breach of Its Obligations Under the Notes**

46. Borrower's failure to remit timely payment of quarterly interest owed under Section 2(a) of the Notes constitutes an Event of Default under Section 4(a)(i) of the Notes.

47. Borrower's failure to remit timely payment of all principal amounts owed pursuant to the Notes by the applicable Due Dates constitutes an Event of Default under Section 4(b) of the Notes.

48. Pursuant to the Notes, all obligations of the Borrower to Lender are due immediately, including all unpaid principal and accrued interest. (Ex. A, § 4(a)-(b); Ex. B, § 4(a)-(b); Ex. C, § 4(a)-(b).)

## FIRST CAUSE OF ACTION
**(Breach of Contract of March 9 Note Against J. Streicher Holdings, LLC)**

49. Lender incorporates by reference each and every allegation contained in paragraphs 1-48 of the Complaint.

50. As set forth above, the March 9 Note between Lender, on one hand, and Borrower, on the other hand, is a valid and enforceable contract.

51. Lender has fully performed its obligations under the March 9 Note.

52. Borrower has materially breached the March 9 Note by failing to deliver the principal, interest, and all other amounts payable under the March 9 Note, as of that agreement's Due Date on March 9, 2024.

## SECOND CAUSE OF ACTION
**(Breach of Contract of March 20 Note Against J. Streicher Holdings, LLC)**

53. Lender incorporates by reference each and every allegation contained in paragraphs 1-52 of the Complaint.

54. As set forth above, the March 20 Note between Lender, on one hand, and Borrower, on the other hand, is a valid and enforceable contract.

55. Lender has fully performed its obligations under the March 20 Note.

56. Borrower has materially breached the March 20 Note by failing to deliver the principal, interest, and all other amounts payable under the March 20 Note, as of that agreement's Due Date on March 20, 2024.

### THIRD CAUSE OF ACTION
**(Breach of Contract of June 7 Note Against J. Streicher Holdings, LLC)**

57. Lender incorporates by reference each and every allegation contained in paragraphs 1-56 of the Complaint.

58. As set forth above, the June 7 Note between Lender, on one hand, and Borrower, on the other hand, is a valid and enforceable contract.

59. Lender has fully performed its obligations under the June 7 Note.

60. Borrower has materially breached the June 7 Note by failing to deliver the principal, interest, and all other amounts payable under the June 7 Note, as of that agreement's Due Date on June 6, 2024.

### FOURTH CAUSE OF ACTION
**(Corporate Veil Piercing Against J. Streicher Holdings, LLC and J. Streicher & Co., LLC)**

61. Lender incorporates by reference each and every allegation contained in paragraphs 1-60 of the Complaint.

62. At all relevant times, Borrower owned and/or controlled JSCo.

63. At all relevant times, Borrower dominated and controlled the assets, operations, and activities of JSCo using its corporate form as an instrumentality to shield Borrower from any attempt by Lender to recover amounts owed pursuant to the Notes.

64. At all relevant times, Borrower failed to observe important corporate formalities and used the assets and operations of JSCo for its own purpose and benefit to shield Borrower from any attempt by Lender to recover amounts owed pursuant to the Notes.

65. At all relevant times, Borrower dominated and controlled JSCo to such an extent that any adherence to the fiction of JSCo's separate existence would permit the abuse of a limited liability company and cause and promote injustice by allowing Defendants to evade liability or veil assets that should in equity be used to satisfy the judgment sought by Lender in this litigation.

66. At all relevant times, JSCo was and is an alter ego of Borrower because there was and is such unity of interest, ownership and control that JSCo must be treated as one with Borrower to prevent the inequitable result of permitting either entity evade Borrower's obligations to Lender under the Notes.

67. As a result of the foregoing, Lender is entitled to a declaration that JSCo is liable for Borrower' obligations to Lender.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A. Monetary damages against Borrower and JSCo in an amount to be determined at trial, but in no event less than $15,533,638.61 (as of the date of this filing);

B. Pre-judgment and post-judgment interest;

C. Lender's costs and expenses in this litigation, including attorneys' fees, pursuant to Section 8(a) of the Notes;

D. Any other relief as the Court may deem just and proper.


Dated:  December 12, 2024					Respectfully submitted

                                             **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**

                                             By: *Jacob H. Hupart*

                                             Jacob H. Hupart
                                             jhhupart@mintz.com
                                             919 Third Avenue
                                             New York, NY 10022
                                             Tel: (212) 935-3000

                                             *Attorney for Plaintiff Demeter Investment Holdings*